SIGNED this 5th day of October, 2011

_____
Marcia Phillips Parsons
UNITED STATES BANKRUPTCY JUDGE

_____

[This opinion is not intended for publication as the precedential effect is deemed limited.]

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br><br>    JESSE GERALD HEINZ and<br>    VICTORIA MICHELLE HEINZ,<br><br>                    Debtors. | No. 10-52964<br>Chapter 7 |
| MARK FORSYTH and<br>KIMMERLY LINDSAY,<br><br>    Plaintiffs,<br><br>vs.<br><br>JESSE GERALD HEINZ,<br><br>    Defendant. | Adv. Pro. No. 11-5009 |

### M E M O R A N D U M

APPEARANCES:

| | |
|---|---|
| Mark S. Dugger, Esq.<br>625 East Elk Avenue<br>Elizabethton, Tennessee 37643<br>*Attorney for Plaintiffs* | Fred M. Leonard, Esq.<br>27 Sixth Street<br>Bristol, Tennessee 37620<br>*Attorney for Defendant* |

**Marcia Phillips Parsons, Bankruptcy Judge.** Presently before the court is the Defendant's motion for summary judgment on the Plaintiffs' claims of nondischargeability under § 523(a)(2)(A), (4), and (6) of the Bankruptcy Code. Plaintiffs concede in response that their § 523(a)(4) and (6) claims should be dismissed but oppose the motion as to their § 523(a)(2)(A) claim. For the reasons discussed below, the Defendant's motion for summary judgment on this issue will be denied except as otherwise provided herein. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(i).

I.

On November 17, 2010, Defendant Jesse Gerard Heinz and his wife Victoria Michelle Heinz filed for bankruptcy relief under chapter 7 of the United States Bankruptcy Code. Plaintiffs Mark Forsyth and Kimmerly Lindsay filed their complaint initiating the present adversary proceeding on February 22, 2011. They allege that they entered into a construction contract with the Defendant on October 2, 2008, wherein he agreed to construct a house on real property owned by them in Butler, Tennessee for a contract price of $342,720. The Plaintiffs state that construction began on October 29, 2008, and that they terminated the Defendant's services on November 30, 2009, after construction was approximately 54% complete and after paying the Defendant approximately $152,000 of the contract price.

According to the complaint, the Defendant was negligent in the construction of their house in various ways; he also failed to build the house in accordance with the terms of the contract and with applicable building codes, failed to pay subcontractors or suppliers for materials used on the project, used items purchased with the Plaintiffs' funds on other construction jobs, and failed to give the Plaintiffs credit for returned materials. The Plaintiffs also claim that the Defendant, willfully and with the intent to defraud them, misrepresented that he was licensed and qualified to construct their house because his contractor license was expired at the time he entered into the contract with them and had a monetary limit of only $150,000. The Plaintiffs assert that the Defendant's actions violated the Tennessee Contractor and Licensing Act of 1994 and constituted an unfair or deceptive act under the Tennessee Consumer Protection Act, such that in addition to compensatory damages of $342,000 they are entitled to treble or punitive damages and attorney fees. Lastly, the Plaintiffs seek a determination that their claim against the Defendant is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) for fraud, under § 523(a)(4) for fraud or defalcation while acting in a

2

fiduciary capacity, and § 523(a)(6) for willful and malicious injury to property. They note that prior to the Defendant's bankruptcy filing, they had filed suit against him in Circuit Court for Carter County, Tennessee, but the action was stayed by his bankruptcy filing.

In his answer, the Defendant denies that he personally entered into a construction contract with the Plaintiffs, noting that the contract was between the Plaintiffs and Masters Touch Custom Homes, Inc. The Defendant also denies all allegations of negligence, breach of contract, misuse of funds, and misrepresentation by him. The Defendant disputes that the Plaintiffs are entitled to a judgment against him or that there is any basis for a finding of nondischargeability under the Bankruptcy Code. He further responds that Plaintiffs neglected and abandoned the property after they terminated the contract, thereby causing the property to deteriorate.

On August 4, 2011, the Defendant filed the motion for summary judgment that is currently before the court. Along with the motion, the Defendant filed a Statement of Undisputed Material Facts as required by E.D. Tenn. LBR 7056-1 and a memorandum of law. The summary judgment motion is supported by the affidavit of the Defendant, along with numerous exhibits including the construction contract and the contractor's license under which the construction work was performed. The Defendant asserts that there is no dispute of facts and that he is entitled to dismissal of the complaint against him as a matter of law. Specifically, he contends that he did not stand in a fiduciary capacity to the Plaintiffs for purposes of § 523(a)(4), and that there is no evidence of a willful and malicious injury to property under § 523(a)(6). As to the Plaintiffs' § 523(a)(2)(A) claim, the Defendant argues that there is no evidence of fraud or intent to deceive. More specifically, he contends that there is no evidence that he intentionally misrepresented or failed to disclose the monetary limit on the contractor's license. The Defendant points out that the general contractor's license number was on the face of the construction contract and that he supplied a copy of the contractor license to Plaintiffs' bank.

The Plaintiffs filed a response to the Defendant's motion on September 6, 2011, supported by the affidavit of Plaintiff Mark Forsyth and numerous exhibits and affidavits, including the affidavit of Telise Roberts, Assistant Director of the Tennessee Board of Licensing Contractors. As noted, the Plaintiffs concede that their § 523(a)(4) and (6) claims should be dismissed but continue to pursue their § 523(a)(2)(A) claim. They assert that their filings set forth facts sufficient to create

3

a genuine issue of material fact on this claim such that the Defendant's motion for summary judgment should be denied. In this regard, the Plaintiffs' response indicates that they are no longer pursuing any allegation regarding misuse of contract funds but they continue to maintain that the Defendant fraudulently misrepresented the status of the contractor's license, the qualifications to construct a house of the size contemplated by the parties' agreement, and the quality of the work that would be performed. Accordingly, the court will dismiss the § 523(a)(4) and (6) claims and will only examine the record to determine whether the Defendant is entitled to summary judgment on the Plaintiffs' § 523(a)(2)(A) cause of action.

II.

Fed. R. Civ. P. 56, as incorporated by Fed. R. Bankr. P. 7056, mandates the entry of summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986)).

The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S. Ct. 1598 (1970)). The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-52. In considering the motion, the court must construe all reasonable inferences in favor of the nonmoving party. *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir. 2003) (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001)). The party opposing a motion for summary judgment "'may not rest upon mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.' The party opposing the motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* at 442–43 (citations omitted). "If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Braithwaite v. Timken Co.*, 258 F.3d at 493 (quoting *Ercegovich*

*v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998)).

III.

Section 523(a)(2)(A) of the Bankruptcy Code provides in pertinent part that:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). For purposes of this provision, false pretenses and false representations "encompass statements that falsely purport to depict current or past facts." *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003). "'False pretense' involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *Id.* "Actual fraud 'consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another–something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *Id.* The Sixth Circuit Court of Appeals has held that in order for a debt to be nondischargeable under § 523(a)(2)(A), the creditor must prove that:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir. 1998) (footnote omitted). The plaintiff has the burden of proof which must be met by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654 (1991). Moreover, "exceptions to discharge are to be strictly construed against the creditor." *In re Rembert*, 141 F.3d at 281 (citing *Mfr.'s Hanover Trust v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir. 1988)).

The Plaintiffs contend that in order to induce them to enter into the construction contract, the Defendant made material misrepresentations regarding the following: (1) the status of the contractor's license; (2) the qualifications to construct a house of the size contemplated by the

parties' agreement; and (3) the quality of the work to be performed.[1]  The court will examine each of these alleged misrepresentations and ascertain whether the Plaintiffs have produced evidence sufficient to support the five *Rembert* elements.

Turning to the first alleged misrepresentation and the first *Rembert* element, there is evidence in the record that the Defendant falsely represented that Masters Touch was a licensed contractor and that he made this representation with knowledge of its falsity or with gross recklessness. The contracts that the Defendant sent to the Plaintiffs plainly stated "Licensed,"[2] yet according to records from the Tennessee Board of Licensing Contractors, attached to the affidavit of Telise Roberts, Masters Touch's license expired on May 31, 2008, and was not reissued until October 7, 2008. The Defendant's purported knowledge of this expiration is demonstrated by the fact that he applied for renewal of the license on September 2, 2008, and paid the required renewal fee and penalties. Materiality of the misrepresentations is demonstrated by

Plaintiff Mark Forsyth's statement in his affidavit that "had we been advised of Mr. Heinz['s] license status and that he was no [sic] licensed to build a house in our price range we would not have

---

[1] An examination of the contract reveals that the party with whom the Plaintiffs contracted was Masters Touch Custom Homes, Inc., rather than the Defendant personally, as he states in his answer. According to the various attachments supplementing the affidavit of Telise Roberts, Assistant Director of the Tennessee Board of Licensing Contractors, the Defendant was the President of Masters Touch and as its qualifying agent completed the necessary examinations required for licensure on its behalf. Under Tennessee case law, the corporate status of Masters Touch does not shield the Defendant from individual liability to the extent he participated in the commission of a tort by Masters Touch. *See, e.g., Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 821 (Tenn. App. 1995) (individual may be liable for fraud or misrepresentation even when acting as an agent for a corporation); *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn. App. 1980) ("An officer or director of a corporation who commits or participates in the commission of a tort is likewise liable to third parties regardless of the liability of a corporation."). Additionally, pursuant to the Tennessee Contractor Licensing Act of 1994, any individual who has an ownership in a corporation and makes misrepresentations about the corporation's status as a licensed contractor is personally liable for the misrepresentation. Tenn. Code. Ann. § 62-6-136(c).

[2] The parties actually signed two contracts, the first one on August 28, 2008, and the second on October 2, 2008. According to the affidavit of the Plaintiff Mark Forsyth, the execution of the second was necessary to amend the draw schedule as required by the lender. In all other respects the terms of the two contracts were identical, with both including the "Licensed" statement. Additionally, the contractor's license was expired on the date of each, although the Defendant had applied for reinstatement by the latter date.

6

signed the contract in August of 2008." *See In re Copeland*, 291 B.R. at 761 (material misrepresentation is a "substantial inaccurac[y] of the type which would generally affect a lender's or guarantor's decision").

Similarly, with respect to the second alleged misrepresentation concerning the qualifications of Masters Touch to build a house of the contract size, again the Plaintiffs provide sufficient evidence to support the first *Rembert* component. By stating in the contract that Masters Touch was licensed, the Defendant impliedly represented that Masters Touch was licensed in an amount sufficient to build a house of the size provided for in the contract, a house costing $342,700. Additionally, according to both the Defendant's and Mr. Forsyth's affidavits, prior to the parties entering into their contract the Defendant showed the Plaintiffs another house Masters Touch was building in the same subdivision in order to demonstrate "the type of house he could build." Mr. Forsyth states in his affidavit that this other house was much larger than the house the Plaintiffs planned to build, leading the Plaintiffs to believe that Masters Touch was qualified to build their size of house. The Defendant's act of showing the Plaintiffs this other house was an implicit representation that Masters Touch was qualified to build a house of the contract size. Falsity of this representation is supported by Ms. Roberts' affidavit, which indicates that the monetary limit on Masters Touch's contractor's license never exceeded $150,000. The Defendant's knowledge of this limit is suggested by state board records indicating that he sought to increase this monetary limit to $500,000 on April 28, 2004, but his request was not processed because he failed to furnish a current reviewed or audited financial statement. Materiality is again supported by Mr. Forsyth's affidavit statement that the Plaintiffs would not have signed the contract had they know that Masters Touch was not licensed to build a house in their price range.[3]

---

[3] As previously recognized by this court, it is well settled that a misrepresentation regarding licensure may serve as a basis for nondischargeability under 11 U.S.C. § 523(a)(2)(A). *See Davis v. Prichard (In re Prichard)*, No. 08-5015, 2009 WL 1957741, *3-5 (Bankr. E.D. Tenn. July 2, 2009) (concluding that misrepresentations regarding licensure and misuse of funds in the construction context did satisfy the first *Rembert* element); *see also Sinha v. Clark (In re Clark)*, 330 B.R. 702, 705-07 (Bankr. C.D. Ill. 2005) (finding, among other misrepresentations, that a contractor made false representations regarding being licensed and insured); *Loughlin v. Rudnick (In re Rudnick)*, No. A10-90021-DMD, 2011 WL 3667639, *1-4 (Bankr. D. Alaska Aug. 22, 2011) (finding contractor was only licensed as a speciality contractor and not a general contractor at time
(continued...)

7

Turning to the third alleged misrepresentation, statements regarding the quality of the work to be performed by Masters Touch, the Plaintiffs contend that the Defendant made a misrepresentation of this type in two ways: first, by stating in the contract that the house to be built would meet or exceed all local building codes and, second, by his showing them the other house in the same subdivision with its superior quality of work. In order to demonstrate the falsity of these representations, the Plaintiffs submit the affidavit of Ronald Corum, a licensed professional engineer, who states, *inter alia*, that the quality of the work in the Plaintiffs' house "was grossly inferior for the expertise of a licensed contractor," and "violated basic building practices and standards." The Plaintiff also supply the affidavit of Amos Halava, a partner in Driftwood Builders Partnership, who opines, *inter alia*, that the house was "not constructed in accordance with the standards of trade," that "[t]he builder did not follow the framing plan," and that the quality of work of the builder violated basic building practices and standards." For materiality, the Plaintiffs again rely on Mr. Forsyth's affidavit wherein he states that the Plaintiffs signed the contract with the Defendant based on his representations regarding the quality of work, i.e., the building code statement in the contract and his showing of the other house that Masters Touch was building.

Notwithstanding this evidence and the severity of the construction defects expressed by the affiants, there is no indication in the record that the Defendant's representations regarding the quality of the work were false at the time he made them or that he made them with gross recklessness as to their truth. There is no suggestion that the house the Defendant showed the

---

[3](...continued)
of contracting and when subsequently licensed as a general contractor defendant exceeded monetary limit placed on license); *Ford v. Hebert (In re Hebert)*, No. 10-1074, 2011 WL 351667, *1-3 (Bankr. E.D. La. Feb. 1, 2011) (concluding that contractor falsely represented licensing status through oral representations and listing license number on the parties' contract); *cf. Billings v. Escalante (In re Escalante)*, No. 10-1147 J., 2011 WL 2600717, *2 (Bankr. D.N.M. June 29, 2011) ("The failure of a contractor to disclose to an unsophisticated consumer that he was not licensed to perform the work contracted for can constitute an implied misrepresentation for purposes of 11 U.S.C. § 523(a)(2)(A)."); *Vaks v. Grenier (In re Grenier)*, No. 07-1131, 2009 WL 763352, *9 (Bankr. D. Mass. Mar. 19, 2009) ("A misrepresentation that a contractor has a license when in fact the contractor does not may form the basis of an exception to discharge under § 523(a)(2)(A) where the creditor would not have hired the contractor had he or she known the contractor was unlicensed, where the creditor justifiably relied on the representation, and where the creditor sustained damage from the contractor's fraud and substandard work.").

Plaintiffs was not being built by Masters Touch or that he misrepresented its condition in some respect. *Cf. Green v. Carle (In re Carle)*, 09-50542-RBK, 2010 WL 5394793, at *7 (Bankr. W.D. Tex. Dec. 28, 2010) (describing the misrepresentations of an individual with no construction experience who claimed to be a partner in a building company in which he was actually only an employee and who showed various sample homes he claimed to have built but in fact had not). As to the building codes statement in the contract, similarly there is no proof that the Defendant intended to build a house that would not meet the building codes. The failure to perform a contractual promise is insufficient to make a debt nondischargeable, even if there is no excuse for the subsequent breach. 4 *Collier on Bankruptcy* ¶ 523.08[1][d] (16th ed. 2011). Because the Plaintiffs have failed to come forward with evidence supporting the allegation that the Defendant fraudulently misrepresented the quality of his work and that he would build the house according to local building codes, the Defendant is entitled to summary judgment on this portion of the Plaintiffs' § 523(a)(2)(A) claim.

With respect to the two allegations that remain, the license status and the qualifications to build a house of the contract size, the court must examine whether there is sufficient proof to support the other elements of *Rembert*. The second *Rembert* element, intent to deceive, is measured by a subjective standard. *In re Rembert*, 141 F.3d at 281 (citing *Field v. Mans*, 516 U.S. 59, 70-72, 116 S. Ct. 437 (1995)). Intent to deceive a creditor exists "when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor." *In re Copeland*, 291 B.R. at 765-66 (quoting *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001)). "What courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent." *In re Rembert*, 141 F.3d at 282 (quoting *Chase Manhattan Bank v. Murphy (In re Murphy)*, 190 B.R. 327, 334 (Bankr. N.D. Ill. 1995)). As stated in *Copeland*:

> A debtor's fraudulent intent "may be inferred from the totality of the circumstances. The bankruptcy court must consider whether the totality of the circumstances 'presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.' The court may consider not only the debtor's conduct at the time of the representations, but may consider subsequent conduct, to the extent that it provides an indication of the debtor's state of mind at the time of the actionable representations."

*In re Copeland*, 291 B.R. at 766 (quoting *Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492

(Bankr. D. Colo. 2002)).

There is evidence in the record supporting intent to deceive by the Defendant. The contractor's license for Masters Touch had been delinquent on three prior occasions and the Defendant had sought but had not obtained a higher monetary limit for the license. Nonetheless, the Defendant represented that Masters Touch was licensed and held it out as qualified to build a house with a construction cost of more than twice its monetary limit. *Cf. In re Rudnick*, 2011 WL 3667639, *4 (concluding that an intent to deceive did exist when a contractor misrepresented himself as a general contractor and entered into a contract prior to receiving a general contractor's license, which was later received with a monetary limitation below the value of the contract). The Defendant argues that there was no intent to deceive because he listed Masters Touch's general contractor's license number on the face of the construction contract, from which the Plaintiffs could have learned the true state of the license status, and because he provided to the Plaintiffs' bank proof of the contractor's license which plainly stated on its face the $150,000 limit. While this evidence arguably tends to negate an intent to deceive, the evidence is not so one-sided in Defendant's favor that he must prevail as a matter of law on this issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251-52 (discussing standard for grant of summary judgment).

The third *Rembert* element, justifiable reliance by the creditor, is also a subjective standard, requiring a showing that the creditor actually relied on the misrepresentation and that the reliance was justifiable. *See In re Copeland*, 291 B.R. at 766-67; *see also Field v. Mans*, 516 U.S. at 74-75 (holding that justifiable reliance does not entail reasonable reliance). "Under this standard, a creditor will be found to have justifiably relied on a representation even though 'he might have ascertained the falsity of the representation had he made an investigation.'" *In re Copeland*, 291 B.R. at 767 (quoting *Comm. Bank & Trust Co. v. McCoy (In re McCoy)*, 269 B.R. 193, 198 (Bankr. W.D. Tenn. 2001)).

Plaintiff Mark Forsyth's affidavit supports actual reliance, stating that "[h]ad we been advised of [the] license status and that [Masters Touch] was no[t] licensed to build a house in our price range, we would not have signed the contract in August of 2008." *See, e.g., Bottari v. Baiata (In re Baiata)*, 12 B.R. 813, 820 (Bankr. E.D.N.Y. 1981) (addressing 11 U.S.C. § 523(a)(2)(A) claim in the context of an unlicensed contractor, and noting that "[t]he incidence of license conveys to lay

persons a concept of authority and standards of workmanship impacting on reliance"). Again, the fact that the contractor's license number was on the contract and that the Defendant revealed the monetary limits to the Plaintiffs' bank[4] do not definitively refute actual reliance, as there is nothing in the record suggesting that the Plaintiffs looked up the license status, that their bank informed them of the monetary limits, or that the bank was the Plaintiffs' agent. Furthermore, the evidence in the record demonstrates justifiability. Even though the Plaintiffs had the contractor's license number, they were under no obligation to ascertain the falsity of the Defendant's licensing representations through an independent investigation. *See In re Copeland*, 291 B.R. at 767.

Lastly, the creditor's reliance on the debtor's misrepresentations must have been the proximate cause of the loss sustained by the creditor in order to satisfy the fourth *Rembert* requirement. *In re Rembert*, 141 F.3d at 280-81. "Proximate cause is established where the misrepresentation is a substantial factor in the loss and where the loss may be reasonably expected to result from reliance." *Wings & Rings, Inc. v. Hoover (In re Hoover)*, 232 B.R. 695, 700 (Bankr. S.D. Ohio 1999) (citing *Smith v. Young (In re Young)*, 208 B.R. 189, 200 (Bankr. S.D. Cal. 1997)). In other words, "there must be 'a direct link between the alleged fraud and the creation of the debt.'" *In re Copeland*, 291 B.R. at 767 (quoting *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 n.7 (1st Cir. 2001)). As has already been stated, Plaintiff Mark Forsyth's affidavit demonstrates that had the Plaintiffs been aware of Masters Touch's licensing status and monetary limitation, they would not have entered into the construction contract. As explained by the First Circuit's Bankruptcy Appellate Panel:

> When a creditor establishes that a debtor fraudulently induced the creditor to enter into a transaction by a misrepresentation that goes to the essence of the transaction, i.e., a debtor's training, competency or experience to complete the work contemplated by the transaction, the misrepresentation was a substantial factor in entering into the transaction, the debtor's work later appears defective, and the creditor suffers a loss, the creditor has established a *prima facie* case that the defects derive directly from the lack of professional qualifications of the debtor.

---

[4] This evidence may also pertain to the materiality component of the first *Rembert* element as it has been stated that "[a] misrepresentation is not material if the creditor knows it is false or 'possesses information sufficient to call the representation into question.'" *In re Sheridan*, 57 F.3d 627, 635 (7th Cir. 1995). Regardless of the appropriate *Rembert* component, the fact that the bank possessed the licensure information does not defeat the Plaintiffs' § 523(a)(2)(A) claim absent proof of agency or actual knowledge by the Plaintiffs

*Gem Ravioli, Inc. v. Creta (In re Creta)*, 271 B.R. 214, 220 (B.A.P. 1st Cir. 2002) (citations omitted) ("A misrepresentation as to whether a debtor has such a license goes to the very essence of the agreement, i.e., the reliance by the contracting party that the debtor has the requisite knowledge, experience, and training to properly complete the work.").

Moreover, the current record before this court fails to challenge this conclusion. Although the act of license renewal may be viewed as a mere formality under some circumstances, there is no indication that the monetary limitation placed on Masters Touch's contractor's license was unrelated to its competence or ability to perform in this context.[5] *Cf. Willcox v. Carpenter (In re Carpenter)*, 453 B.R. 1, 10-11 (Bankr. D.D.C. 2011) (concluding that home improvement licensing requirements in the District of Columbia do not exist to assure competency to perform work and therefore could not be the proximate cause of the creditor's losses).

V.

After construing all reasonable inferences in favor of the nonmoving Plaintiffs, the court concludes that they have demonstrated specific facts showing that there is a genuine issue for trial as to whether the Defendant fraudulently represented the status of Masters Touch's contractor's license and its qualifications to build a house of the contract size. Accordingly, an order will be entered denying the Defendant summary judgment as to these bases for Plaintiffs' § 523(a)(2)(A)

---

[5] The Tennessee Supreme Court has stated that "[t]he purpose of a monetary limitation, of course, is to afford financial security to owners, vendors and others dealing with a contractor." *Helton v. Angelopoulos*, 629 S.W.2d 15, 18 (Tenn. 1982). A 1993 Tennessee Attorney General Opinion explains that in determining the monetary limitations to be placed on a license, "the Board is to consider the applicant's years of experience and a given multiple of the applicant's net work or his working capital." Tenn. Att'y Gen. Op. 93-12, 1993 WL 349725, *3 (Feb 11, 1993) (citing Tenn. Comp. R. & Regs. 0680-1.13(1)). While the current rules regarding monetary limitations do not specifically state that an "applicant's years of experience" are to be considered in determining an applicant's monetary limit, the Tennessee Supreme Court has observed that the underlying purpose of the licensing statutes is "to safeguard life, health, and property, and to promote public welfare by requiring that only properly qualified persons shall be engaged in general contracting . . . ." *Farmer v. Farmer*, 528 S.W.2d 539, 542 n.1 (Tenn. 1975) (quoting historical language of the Tennessee statutes and concluding that the intent of the historical language was "implicit in those portions of the statute that do remain" in reviewing the case of a contractor who sought recovery for construction work performed despite having not complied with the licensing requirements for contractors).

12

claim. Additionally, summary judgment will be granted as to the Plaintiffs' § 523(a)(4) and (6) claims and on that portion of the Plaintiffs' § 523(a)(2)(A) claim regarding Defendant's alleged misrepresentation of the quality of the work to be performed, including the representation that the house would be built according to local building codes.

# # #